PEOPLE ex rel. WELCH et al. v. DUNN et al., Board of Audit. (No. 154–92.)

(Supreme Court, Appellate Division, Third Department. July 1, 1195.)

1. MUNICIPAL CORPORATIONS ☞36—ANNEXATION OF TERRITORY—APPORTIONMENT OF PROPERTY AND LIABILITIES.

Laws 1914, c. 58, annexing certain territory to the city of Schenectady, provides in section 6 that debts, etc., against the school district, including such added territory, shall be apportioned between the city and the district in the same manner as between the city and towns of which a portion is added to the city, except that the city and the portion thereby annexed shall not be liable for a bonded debt of the district incurred subsequent to January 1, 1914, for the construction of a schoolhouse in the portion of the district not thereby included in the city. Section 7 provides that the title to real property· of the district within the added territory shall vest in the city, and that the board of audit shall apportion to the city such personal property of the district as may be just. In November, 1913, the district schoolhouse within the territory not annexed to the city was destroyed by fire, and the district received $16,000 of insurance on the building. Prior to· such act it had dedicated this amount to the construction of a new building, and had provided for the issuance of bonds for an additional amount for this purpose. *Held* that, while personal property may consist of money, it was not intended to authorize the apportionment to the city of any part of such insurance money; it standing in equitable contemplation in place of the building.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 105–111; Dec. Dig. ☞36.]

2. MUNICIPAL CORPORATIONS ☞29—ANNEXATION OF TERRITORY—STATUTORY PROVISIONS.

Laws 1914, c. 58, annexing certain territory to· the city of Schenectady, is not unconstitutional because of the provision exempting the city from liability on bonds previously issued for the erection of a school building in a district, part of which is thereby annexed to the city.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 66–75; Dec. Dig. ☞29.]

3. SCHOOLS AND SCHOOL DISTRICTS ☞41—CHANGE OF BOUNDARIES—LIABILITY FOR TUITION.

A school district, part of the territory of which is annexed to the city of Schenectady by Laws 1914, c. 58, had no claim for tuition from the annexed district, where the pupils were merely receiving what had already been provided for out of the tax levy for the then current year.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 71–80; Dec. Dig. ☞41.]

Original certiorari proceeding by the People, on relation of Harry N. Welch and others, as trustees, individually, and as taxpayers, against William D. Dunn and others, individually and as· a Board of Audit, to review the determination of the Board of Audit created by chapter 58 of the Laws of 1914, consisting of the Board of Aldermen of the City of Schenectady, and the Trustees of the Common School District No. 12 of the Towns of Rotterdam and Niskayuna. Determination modified and affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Burritt B. Johnson, of Schenectady, for relators.

Edward D. Cutler, Corp. Counsel, and Stephen A. Wolongiewicz, First Asst. Corp. Counsel, both of Schenectady, for respondents Dunn and others.

Del B. Salmon, of Schenectady, for respondent Vandecar.

WOODWARD, J. [1] Chapter 58 of the Laws of 1914, is entitled "An act to amend the charter of the city of Schenectady, in relation to city and ward boundaries," and provides for taking into the city of Schenectady portions of the towns of Rotterdam and Niskayuna. Section 5 of the act provides that the members of the common council of the city of Schenectady and the members of the town boards of the two towns shall constitute auditing boards for the purpose of adjusting town liabilities under the preceding section, and that within 90 days of the time the act takes effect they are to meet and "ascertain and audit all debts, claims, demands and charges against the town," etc.; and section 6 of the same act provides that:

The "debts, demands, claims and charges against the common school district which includes such added territory shall be apportioned and adjusted between the city and such school district in the same manner, so far as practicable, as between the city and one of such towns of which a portion is added to the city by this act, except that the board of audit shall consist of the common council of the city and the trustees of such school district and the school district tax roll shall be used as the basis of adjustment and apportionment, and except that the city and the portion hereby annexed shall not be liable for any portion of a bonded debt of the school district incurred subsequent to January first, nineteen hundred and fourteen, for the construction of a schoolhouse in the portion of the school district not included by this act in the city of Schenectady."

So far it is clear that the Legislature has not intended to vest in this body, created for a special purpose, any powers beyond an apportionment and adjustment of the "debts, demands, claims and charges against the common school district," in their relation to the city of Schenectady, specially excluding from such debts, demands, claims, and charges the debt authorized by the members of the school district subsequent to the 1st day of January, 1914; that is, any debts, demands, claims, and charges existing against the school district as a whole, at the time of severing a portion of such district and including it in the city of Schenectady, were to be adjusted and apportioned between the portion of the school district remaining and the city of Schenectady. The board was called upon to determine the existence of all of such debts, etc., and to say what part should remain a charge against the school district and what part should be assumed by the city of Schenectady. In reaching this determination the assessment roll of the district was to become the basis. The debts, etc., were to be apportioned upon the relation which the taxable portion of the district remaining bore to that portion which was absorbed by the city of Schenectady, and it seems to be agreed that the part taken was about 34 per cent. of the assessed valuation of the original district. Therefore, if there were certain debts owing by the district, a trifle over 34 per cent. of such debts should become a charge against the city, and the remainder should be paid by the school district. No

dispute arises over this calculation. The difficulty occurs over the question of what belonged to the adjustment; but as the statute was apparently drawn in the full knowledge of the existing conditions, as is evidenced by the exclusion of the bonds provided for subsequent to the 1st day of January, 1914, it would not seem that a very difficult problem was presented to the auditing board.

In addition to the provisions of section 6 of the act, it was provided by section 7 that:

The "title to all real property, if any, of said school district located within the added territory, shall vest in the city, and the value thereof, as determined by the board of audit constituted by this act for apportioning liabilities between the town and such school district, shall be taken into account in fixing the city's liability for any outstanding bonds of the school district issued and sold for the purchase or improvement of such real property. Such board of audit shall also apportion to the city such personal property of the school district as may be just and equitable."

It appears from the record now before us that there was no real estate belonging to the school district which was within the territory added to the city of Schenectady, so that the language of section 7, except as it relates to personal property, can have no bearing upon the question here presented, only as it bears upon the construction of the act as a whole. It added nothing to the powers of the board of audit, and made no difference in their powers, in the absence of real estate belonging to the district and located within the territory annexed to the city, for it was only in the event of such property existing that its title was to vest in the city of Schenectady, and its value was to be taken into consideration, not in connection with the debts, demands, claims, and charges, generally, but "in fixing the city's liability for any outstanding bonds of the school district issued and sold for the purchase or improvement of such real property." The operative language, then, is to be found in section 6 and in that portion of section 7 which provides that:

"Such board of audit shall also apportion to the city such personal property of the school district as may be just and equitable."

The auditing board created by the statute held meetings, and it was recognized that bonds to the amount of $13,000 constituted an existing debt against the school district, and these were apportioned to the school district and to the city of Schenectady for payment on the basis of the assessment roll, and no one raises any question that this was a proper disposition to be made of this debt. The difficulties arise over the action of the board in attempting to turn over to the city of Schenectady certain insurance moneys. On the 13th day of November, 1913, the schoolhouse in the school district here under consideration was destroyed by fire, with a portion of its contents. The building was insured for $16,000 and the personal property for $5,000. In the adjustment with the insurance companies the school district received $16,000 of insurance on the building and $3,708.27 for the personal property destroyed, and the board of audit has apportioned both of these sums between the school district and the city of Schenectady upon the basis of the assessment roll, as well as certain other personal

property which the school district had purchased after the fire for the purpose of conducting a temporary school. It seems to be clear that the statute did not attempt to deal with any of the real estate belonging to the school district, except such as should be within the annexed territory, and while it is true, of course, that personal property may consist of money, we think, under the circumstances here presented, it is a forced construction of the statute to hold that it contemplated transferring any portion of the insurance money resulting from the burning of the school building. That fund in equity stood for the building which had been destroyed. The insurance company, no doubt, had the option of restoring the building or of paying the money, and in paying the money the essence of the property was not changed; it was still, in equitable contemplation, the building. The inhabitants of the district had, prior to the enactment of the legislation, and while it was unquestionably the property of the district, dedicated it to the construction of a new building, and they had provided in connection therewith to bond the district for $46,000 additional, and the Legislature had the particular facts before it, for it was provided in the act that:

The city "shall not be liable for any portion of a bonded debt of the school district incurred subsequent to January first, nineteen hundred and fourteen, for the construction of a schoolhouse in the portion of the school district not included by this act in the city of Schenectady."

Here, if anywhere, was the proper place to provide what was to be done with the insurance money arising from the destruction of the school building. The bonds which had been authorized were a part of the very transaction under consideration, for the entire sum had been dedicated to the construction of a schoolhouse, and it was not to be presumed that the inhabitants would have voted this $46,000 of bonds, except in connection with the appropriation of $16,000 of insurance money to the same object, and if it was the intention of the Legislature to step in an disrupt the undertaking, making it necessary to entirely revise the plan of action, it was natural to expect that it would be done in connection with the provision relieving the city of Schenectady of any liability upon the bonds. Probably, if the old school building had been standing, no one would have thought of suggesting that any part of the value of the same should be apportioned to the city of Schenectady. No provision was made for sharing any part of the value of the land on which it had previously stood, and no language is used in connection with the relieving of the city of Schenectady from responsibility for the bonds; but we are asked to hold that a provision, found in section 7, that this board of audit "shall also apportion to the city such personal property of the school district as may be just and equitable," gives authority for undoing the work of the inhabitants of the school district when they were fully empowered to act, and to take from the district the funds necessary to carry out its plans for housing the school children.

We do not think the Legislature intended this result. A thing which is within the letter of a statute is not within the statute, unless it be within the intention of the makers (Riggs v. Palmer, 115 N. Y. 506,

509, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819), and it would be difficult to conceive of the Legislature intentionally making use of the form of the present statute for the purpose here contended. The provisions of section 7 have ample scope in dealing with the physical personal property, and the insurance money resulting from the loss of personal property, without stretching it to cover money in the hands and control of the school district arising from the destruction of real estate, and which was an essential element in the transaction resulting in the authorizing of the bonds for the construction of a school building. So radical an interference with a condition existing to the knowledge of the Legislature is not to be presumed, where all of the language of the statute can be put into an intelligent use without such construction. It is to be observed that, while the debts, demands, claims, and charges against the school district are to be "apportioned and adjusted between the city and the school district," "except that the city and portion hereby annexed shall not be liable for any portion of a bonded debt of the school district incurred subsequent to January first," and that this apportionment and adjustment is made to depend upon the basis of the assessment roll of the school district, the board of audit is authorized also to "apportion to the city such personal property of the school district as may be just and equitable," without any reference to the assessment roll. One provides for the method of dealing with the debts and obligations, which are to be based on the assessment roll, while the distribution of personal property is to be made upon a basis which shall be "just and equitable"; and it is well known that assessment rolls do not always furnish the basis of a just and equitable distribution of benefits or burdens, while in the matter now before us the board of audit has applied the arbitrary figures of the assessment roll to the distribution of these insurance moneys.

We are of the opinion that the board of audit did not have jurisdiction of the insurance moneys arising from the destruction of the real estate belonging to the school district, and that in this regard the determination of the board of audit should be set aside.

[2, 3] We are persuaded that the contention of the relators that the act is unconstitutional, because of its provisions exempting the city of Schenectady from liability upon the bonds issued subsequent to January 1st, is without merit, and that the amount claimed by the school district for tuitions for pupils from the annexed district is not due, because of the fact that, so far as appears, the pupils were merely receiving what had already been provided for out of the tax levy for the then current year.

We find no reason for interfering with the other provisions of the audit. We think the audit should be amended by striking out the provision distributing any portion of the $16,000 of real estate insurance, and, as so modified, approved, without costs. Determination modified as per opinion, and, as modified, affirmed, without costs. All concur.